**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>    SVB FINANCIAL GROUP,<br><br>            Debtor. | **FOR PUBLICATION**<br><br>Case No. 23-10367 (MG) |
| SVB FINANCIAL TRUST,<br><br>            Plaintiff,<br><br>           v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Silicon Valley Bank,<br><br>            Defendant. | Adv. Pro. No. 25-01150 |

**AMENDED MEMORANDUM OPINION AND ORDER GRANTING IN PART**
**THE FDIC-R'S MOTION TO DISMISS AND PERMISSIVELY ABSTAINING**

*A P P E A R A N C E S:*

SULLIVAN & CROMWELL LLP
*Counsel to SVB Financial Trust*
125 Broad Street
New York, NY 10004-2498
By:    James L. Bromley, Esq.
        Christian P. Jensen, Esq.
        Jared D. Ham, Esq.
        Angela Zhu, Esq.

REED SMITH LLP
*Counsel to the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank*
599 Lexington Avenue
New York, NY 10022
By:    Kurt F. Gwynne, Esq.
        Casey D. Laffey, Esq.

      -and-

2850 N. Harwood Street
Suite 1500
Dallas, TX 75201
By:    Michael P. Cooley, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPCY JUDGE**

Pending before the Court are the *Motion of The Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank, Pursuant to Federal Rule of Civil Procedure 12(B)(1), (B)(6) & (F) and the "First-Filed" Rule, For an Order (I) Dismissing the Complaint and (II) Striking Request for Attorneys' Fees* (the "Motion," ECF Doc. # 6), and the *Memorandum of Law in Support of the Motion of the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank, Pursuant to Federal Rule of Civil Procedure 12(B)(1), (B)(6) & (F) and the "First-Filed" Rule, for an Order (I) Dismissing the Complaint and (II) Striking Request for Attorneys' Fees* (the "Memorandum of Law" or "MOL," ECF Doc. # 7) filed by the Federal Deposit Insurance Corporation (the "FDIC") as receiver for Silicon Valley Bank ("SVB" and the FDIC acting as receiver for SVB, the "FDIC-R").  In response, Silicon Valley Bank Financial Trust ("SVBFT") filed the *SVB Financial Trust's Opposition to the Motion of the FDIC as Receiver for Silicon Valley Bank, for an Order (I) Dismissing the Complaint and (II) Striking the Request for Attorneys' Fees* (the "Opposition," ECF Doc. # 15).  The FDIC also filed the *Reply of the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank, in Support of its Motion, Pursuant to Federal Rule of Civil Procedure 12(B)(1), (B)(6) & (F) and the "First-Filed" Rule, for an Order (I) Dismissing the Complaint and (II) Striking Request for Attorneys' Fees* (the "Reply," ECF Doc. # 16).

2

Additionally, in response to the Court's March 26, 2026 order requiring supplemental briefing addressing permissive abstention under § 1334(c)(1), the parties filed the S*VB Financial Trust's Supplemental Brief re Permissive Abstention*, (the "SVBFT Abstention Brief," ECF Doc. # 20), and the *Supplemental Memorandum of the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank, in Support of Permissive Abstention under 28 U.S.C. § 1334(c)(1)* (the "FDIC Abstention Brief," ECF Doc. # 21).

For the reasons described below, the Court finds that it has jurisdiction over the Motion to Dismiss, **DENIES THE MOTION TO DISMSS** but **PERMISSIVELY ABSTAINS** under 28 U.S.C. § 1334(c)(1) in favor of the action pending in the United States District Court for the Eastern District of North Carolina.  Having applied permissive abstention, the Court only rules on the standing and jurisdictional arguments raised by the parties.

## I.    BACKGROUND

A. Motion to Dismiss

1.  SVB's Losses Due to Forgeries

On December 1, 2020, Elliot Smerling ("Smerling") contacted SVB to establish a line of credit for an entity named JES Global Capital III, L.P. (the "JES Fund") and its general partner, JES Global Capital GP III, LLC (the "JES General Partner" and, together with the JES Fund, the "JES Entities").  (MOL at 4.)  Smerling claimed that the JES Fund was a legitimate private equity fund with $500 million in capital commitments and nearly $100 invested in three portfolio companies.  (*Id.*)  Smerling provided a series of agreements and other materials to SVB, which were purportedly executed by each Limited Partner in the JES Fund.  (*Id.*)  However, the signatures on the agreements were forged.  (*Id.*)

SVB provided a $150 million line of credit to the JES Entities pursuant to a Loan and Security Agreement (the "Loan Agreement"), effective February 3, 2021, which incorporated by reference the forged documents. Smerling and the JES Fund requested for SVB to advance approximately $95 million from the line of credit, which SVB wired to an account that Smerling claimed was associated with the JES Fund. (*Id.*)

SVB discovered the forgeries while conducting post-closing diligence and declared an event of default under the Loan Agreement and demanded immediate repayment from the JES Fund. (*Id.*) Smerling was arrested the same day in Florida by FBI agents. (*Id.*) On March 24, 2021, SVB filed suit against JES and Smerling in the United States District Court for the Southern District of New York. (*Id.*) On June 14, 2021, SVB obtained a final judgment against Smerling in the amount of $79,957,322.65 plus interest.[1] (*Id.*)

Smerling later admitted to bank and securities fraud and pled guilty to charges based on the forgeries he used to induce SVB. (*Id.* at 5.) SVB incurred a direct loss of more than $73 million from the forgeries. (*Id.*) Smerling was ordered to pay restitution to SVB in the amount of $82,172,410.27 plus interest. (*Id.*)

### 2. The Financial Institution Bonds

In August 2020, Federal Insurance Company ("Chubb") issued a primary Financial Institution Bond (the "Chubb Bond"), and Berkley Regional Insurance Company ("Berkley" and together with Chubb, the "Insurers") issued an Excess Bond (the "Berkley Bond" and together with the Chubb Bond, the "Bonds"), which provide coverage for, *inter alia*, "Extended Forgery,"

---

[1] Annexed to the MOL as Exhibit 1 is *Final Judgment on Consent as to Defendant Elliot S. Smerling*, [D.I. 83], *SVB v. JES Global Capital GP III, LLC and Elliot S. Smerling*, 21 Civ. 2552 (JPC), entered on June 14, 2021 (the "Final Judgment").

4

which covers losses resulting from credit extensions in reliance on documents bearing a forgery.

(*Id.*)  The Berkley Bond follows the form of the Chubb Bond and provides coverage for losses in excess of the coverage limits of the Chubb Bond.  (*Id.*)

The Bonds, and all amendments thereto, identify SVBFG as the first named "ASSURED," but also expressly provide coverage for SVBFG's "subsidiaries," which included SVB.  (*Id.* at 6.)  The Chub Bond's Joint Assured Provision provides that

> [o]nly the first named ASSURED shall be deemed to be the sole agent of the others for all purposes under this Bond, including but not limited to the giving or receiving of any notice or proof required to be given and for the purpose of effecting or accepting any amendments to or termination of this Bond. Each and every other ASSURED shall be conclusively deemed to have consented and agreed that none of them shall have any direct beneficiary interest in or any right of action under this Bond and neither this Bond nor any right of action shall be assignable.
>
> . . .
>
> All losses and other payments, if any, payable by the COMPANY shall be payable to the first named ASSURED without regard to such ASSURED'S obligations to others, and the COMPANY shall not be responsible for the application by the first named ASSURED of any payment made by the COMPANY. If the COMPANY agrees to and makes payment to any ASSURED other than the one first named, such payment shall be treated as though made to the first named ASSURED. The COMPANY shall not be liable for loss sustained by one ASSURED to the advantage of any other ASSURED.

(SVB Financial Trust's Complaint for Declaratory Judgment, (the "Complaint," ECF Doc. # 1), Ex. A at 11.)  The Extended Forgery provision states "[l]oss resulting directly from the ASSURED having, in good faith, for its own account or the account of others: a. acquired, sold or delivered, or given value, extended credit or assumed liability, in reliance on any original . . ." and proceeds to list instruments covered subject to conditions that the parties do not dispute are applicable here.  (*Id.* Ex. A at 31.)

3.   The Parties Commence the North Carolina Action

SVBFG notified the Insurers of the losses resulting from the fraud perpetrated by

Smerling in March 2021 and requested coverage under the Bonds (the "Insurance Claim").

(MOL at 7.)  Insurers denied coverage claiming that the loses were not covered by the Bonds,

and SVBFG and SVB, as plaintiffs, filed a joint complaint in the North Carolina Superior Court

of Wake County against the Insurers for breach of contract and declaratory relief (the "North

Carolina Complaint").[2]  (*Id.*)  Insurers removed the action to the United States District Court for

the Eastern District of North Carolina (the "North Carolina Action").  (*Id.*)

The Parties present slightly different accounts for what gave rise to the dispute regarding

who is the true beneficiary under the bonds.  (*Compare* MOL at 8, *with* Opposition ¶ 21.)

Regardless, both parties filed competing motions for summary judgment over the proceeds in the

North Carolina Action.  FDIC-R filed the *Motion for Partial Summary Judgment on Ownership*

*of Insurance Claim* (the "Ownership Motion," N.C. D.I. 143) and the *Memorandum in Support*

*of its Motion for Partial Summary Judgment on Ownership of Insurance Claim* (N.C. D.I. 147)

on October 24, 2025 and SVBFG and SVBFT filed the *Cross-Motion for Partial Summary*

*Judgment* (N.C. D.I. 162) and the *Memorandum of Law in Opposition to FDIC-R's Motion for*

*Partial Summary Judgment and, Alternatively, in Support of SVB Plaintiffs Cross-Motion for*

*Partial Summary Judgment on Ownership of Insurance Claim* (N.C. D.I. 163) ("SVBFT

Opp./Cross Motion") on November 21, 2025.

The FDIC-R seeks a declaratory judgment that it is the "real party in interest" and owner

of the Insurance Claim and proceeds of the North Carolina Action.  (MOL at 10-11.)  The FDIC-

R notes that it also seeks (i) injunctive relief in the form of an order enjoining FDIC-R from

---

[2]   *See SVB Fin. Grp. v. Fed. Ins. Co.*, Case No. 5:23-cv-00095-BO-RN (E.D.N.C. February 27, 2023).

interfering with SVBFT's rights under the Bonds and (ii) an award of SVBFT's costs and attorneys' fees.  (*Id.* at 12.)  In response, SVBFT moved to stay the litigation, and in the alternative, filed a cross motion for partial summary judgment disputing the FDIC-R's claim to the insurance proceeds.  (Opposition ¶ 21.)

### 4.   SVB's Collapse and the Appointment of the FDIC Receiver

On March 10, 2023, the depositors ran on SVB, which did not have cash on hand to cover depositors' withdrawals and ultimately failed, constituting the third-largest bank failure in U.S. history.  (MOL at 7.)  The same day, the California Department of Financial Protection and Innovation closed SVB and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver for SVB.  (*Id.* at 8.)  The FDIC contends that under the Financial Institution Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") the FDIC-R "by operation of law, succeed[ed] to . . . all rights, titles, powers, and privileges" of SVB and (among others) SVBFG with respect to SVB and its assets.  (*Id.* (quoting 12 U.S.C. § 1821(d)(2)(A)(i)).)

SVBFT notes that the Confirmation Order transferred SVBFG's "rights and entitlements under the [Bond]" to SVBFT "free and clear of all Liens, Claims, charges, or other encumbrances. . . ."  (Opposition ¶ 18 (quoting *Findings of Fact, Conclusions of Law and Order Confirming the Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Confirmation Order," ECF Doc. # 1379) ¶¶ 93-94).)  The Confirmation Order further stated that: (1) "all Insurance Policies which identify the Debtor as first named insured . . . shall continue with [SVBFG] unaltered"; (2) "separate and apart from the terms of any Insurance Policies, the Debtor shall turn over recovery of amounts payable and paid to the Debtor or its subsidiaries . . . to [SVBFT] with respect to . . . any Insurance Policy as a result of actions or losses that occurred prior to [November 7, 2024]"; (3) "[SVBFT] shall be responsible

on behalf of [SVBFG] for monitoring and preserving the ability to maintain claims that relate to . . . actions or losses that occurred prior to [November 7, 2024] asserted under the Insurance Policies"; and (4) "nothing shall permit or otherwise effectuate a . . . transfer of the Insurance Policies and/or any rights, benefits, claims, proceeds, rights to payment, or recoveries under and/or relating to the Insurance Policies without the express written consent of the applicable Insurers to the extent required . . . ." (*Id.* (quoting Confirmation Order ¶ 108).)

### A. The Motion

1. FDIC Argues that SVBFT Lacks Constitutional Standing or Prudential Standing

    a. *SVBFT Lacks Standing Because the First and Second Parts of the Succession Clause Transferred to FDIC-R All of SVB and SVBFT's Rights, Titles, Powers and Privileges with Respect to the Insurance Claim and the Proceeds*

        i. SVB's Rights, Titles, Powers and Privileges with Respect to the Insurance Claim and the Proceeds Belong to FDIC-R under the First Part of the Succession Clause

The FDIC-R argues that section 1821(d)(2)(A)(i) of Title 12 (the "Succession Clause") states that FDIC, as receiver, succeeds to "all rights, titles, powers, and privileges of the insured depository institution[.]" (MOL at 18 (quoting 12 U.S.C. § 1821(d)(2)(A)(i)).)  The FDIC-R contends that SVB was an "ASSURED" party under the Bonds, and now the FDIC-R holds the right tile and interest in SVB's property, including its right to pursue its own claim coverage under the Bonds.  (MOL at 18.)

The FDIC-R claims it has exclusive standing to assert all rights and title held by SVB, which include claims based on conduct that "caused injury first to the [b]ank." (*Id.* at 19 (quoting *Vieira v. Anderson (In re Beach First Nat'l Bancshares, Inc.)*, 702 F.3d 772, 777-78 (4th Cir. 2012) (alterations in the original).)  SVB alone obtained the Final Judgment against

8

Smerling, who was ordered to pay restitution to SVB.  (MOL at 20.)  No similar relief was granted to SVBFG, which is legally significant because paying restitution to victims of bank and securities fraud is mandatory and it reaffirms that SVB suffered the direct loss from Smerling's forgery.  (*Id.*)  Therefore, the FDIC-R argues that SVBFT cannot circumvent the first part of the Succession Clause by claiming that it is asserting its own independent claim, as equity owner of SVB, for damages to the "SVB enterprise."  (*Id.* (internal citation omitted).)  SVBFG asserted a joint claim with SVB because it was acting as agent to SVB, which is the real party in interest.  (*Id.*)

The FDIC-R also argues that the Bonds require SVBFG in its capacity as agent to assert claims on behalf of the ASSURED that suffered direct damages from forgery, as the Bonds only insure against direct loss.  (*Id.*)  Indirect losses were not covered by the Bonds.  (*Id.* at 21.)  The FDIC-R states only the ASSURED with a covered loss is entitled to assert a claim under the Bonds, therefore, SVBFG as agent is obligated to assert SVB's claim under the Bonds for the benefit of SVB.  (*Id.*)  Further, the FDIC-R notes that as an agent, SVBFG has a duty of loyalty to its principal, and as such, SVBFT owes a duty not to use the property of its principal for its own benefit.  (*Id.*)

> ii.  SVBFT's Rights, Titles, Powers and Privileges with Respect to the North Carolina Action and the Proceeds Relating to SVB's Losses Belong to FDIC-R under the Second Part of the <u>Succession Clause.</u>

FDIC-R argues that even if SVBFG and SVBFT asserted their own damages claims, the Insurance Claims and proceeds still belong to FDIC-R.  (*Id.* at 22.)  The FDIC-R argues the second portion of the Succession Clause bars attempts to plead around the Receiver's claim.  (*Id.*)  The second part of the Succession Clause provides "all rights, titles, powers, and privileges . . . of any stockholder . . . of such [depository institution in receivership] *with respect to the*

9

*institution and the assets of the institution.*" (*Id.* (quoting 12 U.S.C. § 1821(d)(2)(A)(i)

(emphasis and alteration added).) The FDIC-R claims that through the Succession Clause,

"Congress has transferred everything it could to the FDIC," providing the FDIC with the

exclusive right to assert such rights. (MOL at 22.)

The FDIC-R claims that SVBFG and SVBFT incorrectly contend that they are asserting

their own contractual claims under the Bonds and that they are not asserting a claim under the

Bonds in any agency. (*Id.*) The FDIC-R claims this cannot be true as SVBFT's damages are

derivative and it fails to recognize that SVBFG's right to receive the payment does not provide

SVBFG with an interest in the proceeds. (*Id.* at 22-23.) Further, any rights held by SVBFG and

SVBFT now belong to the FDIC-R. (*Id.* at 23.)

The FDIC-R then turns to SVBFG's and SVBFT's characterization of their own claim as

predicated upon SVBFG's position as equity owner, suffered a loss when "the SVB enterprise

was defrauded." (*Id.* (quoting SVBFT Opp./Cross Motion, p. 21).) The FDIC-R claims that this

interpretation of SVBFT's claim as (i) based on its status as shareholder of SVB and (ii) relating

to SVB and its assets, is what was transferred to the FDIC-R under the Succession Clause.

(MOL at 23.)

> b. *SVBFT Lacks Standing Because SVBFG Abandoned its Equity*
> *Interest in SVB and Related Recovery Rights and/or Litigation Claims*

The FDIC-R then contends that SVBFT lacks standing because SVBFG abandoned its

equity interest in SVB and all related rights of recovery and litigation claims. (*Id.* at 25.) The

Insurance Claim is an alleged recovery right or litigation claim pertaining to SVBFG's former

equity interest in SVB. (*Id.*) The FDIC-R claims that SVBFT's rights, as successor to SVBFG,

are no greater than SVBFG's rights and SVBFG abandoned its equity interest in SVB and related

claims. Accordingly, SVBFT is bound by SVBFG's abandonment of its equity rights and lacks a

claim related to the recovery of SVBFG's interest in SVB and lacks standing to pursue the Insurance Claim. (*Id.*)

### 2. FIRREA Strips this Court of Jurisdiction

#### a. *Section 1821(j) Strips this Court of Jurisdiction to Grant the Requested Relief*

The FDIC-R notes that the Succession Clause states, "no court may take any action . . . to restrain or affect the exercise of powers or functions of [FDIC-R]," except as may be requested by the FDIC's board of directors. (*Id.* at 26 (quoting 12 U.S.C. § 1821(j)).) Quoting case law, the FDIC-R contends that section 1821(j) bars courts from restraining or affecting the FDIC-R's exercise of its powers or functions. (MOL at 26 (internal quotations omitted).) The FDIC-R notes that section 1821(j) is meant to be interpreted broadly and has been interpreted as evidence of Congress's intent to prevent courts from interfering with the FDIC-R in the administration of its duties. (*Id.*)

Other powers the FDIC-R claims it is entitled to exercise without court interference are those listed in section 1821(d)(2)(B), which include "(i) take over the assets of . . . the insured depository institution with all the powers of the . . . shareholders . . . ; (ii) collect all obligations and money due the institution; (iii) perform all functions of the institution in the name of the institution which are consistent with the appointment as conservator or receiver; and (iv) preserve and conserve the assets and property of such institution." (*Id.* at 26-27 (quoting 12 U.S.C. § 1821(d)(2)(B)(i)-(iv)) (omissions in original).) The FDIC-R then discusses case law from this Court and others that it cites for the proposition that this Court may not issue relief that restrains or affects the FDIC-R's exercise of its rights and powers. (MOL at 27-28.)

                    b.   *Section 1821(d)(13)(D) of Title 12 Strips the Court of Jurisdiction Because SVBFT Failed to Seek a Determination of Rights Regarding the Bond Proceeds in the SVB Receivership*

The FDIC-R argues that SVBFT's failure to seek a determination of its rights regarding the proceeds in the SVB receivership also strips this Court of jurisdiction over the complaint under 12 U.S.C. § 1821(d)(13)(D). (*Id.* at 28.) The FDIC-R argues that section 1821(d)(13)(D) provides that "no court shall have jurisdiction over . . . any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver." (*Id.* (quoting 12 U.S.C. § 1821(d)(13)(D)) (omissions in original).) Further, the FDIC-R claims that section 1821(d)(13)(D) extends to post-receivership claims that arise from acts by the Receiver. (MOL at 28.) Citing case law, the FDIC-R claims that there is no argument that can be offered that section 1821(d)(13)(D) does not include complaints requesting declaratory relief and SVBFT's claim should therefore be dismissed. (*Id.* at 29.)

           3.   The FDIS-R Argues that the Court Should Dismiss the Adversary Proceeding Under the "First-Filed" Rule

The FDIC-R then argues that this Court should dismiss this adversary proceeding under the "first-filed" rule. (*Id.*) In this case, the FDIC-R claims that SVBFT seeks to circumvent the "first-filed" rule by filing the instant case, while the North Carolina Action is still pending at the North Carolina Court. (*Id.* at 30.) SVBFG chose the North Carolina Court as the forum for the North Carolina Action and never sought to transfer the North Carolina Action to this Court. (*Id.*) The FDIC-R claims that the instant action and the North Carolina Action are related because they involve the same asserted ownership interest in the same Bonds competing for ownership of the same proceeds. (*Id.*) Therefore, the FDIC-R submits that the cases are at least "related," and the Court should dismiss the instant matter under the "first-filed" rule. (*Id.* at 30-31.)

12

4.   The Complaint Fails to State a Claim for which Relief may be Granted

a.   *Declaratory Judgment Act Does Not Give Rise to an Independent Cause of Action and Relief is Not Warranted*

Next, the FDIC-R claims this Court should dismiss the Complaint for failure to state a claim, as the Declaratory Judgment Act ("DJA") does not create an independent cause of action. (*Id.* at 32.)

The FDIC-R then argues that this Court should dismiss the Complaint because the request (a) has "no useful purpose" in clarifying or settling legal issues, (b) will not "finalize the controversy or relieve uncertainty," and (c) is merely "procedural fencing in SVBFT's race to res judicata." (*Id.* at 33.)  The request for declaratory judgment finding that the FDIC-R did not assert any claims in SVBFG's Chapter 11 proceedings prior to the Bar Date" is not relevant as it is not disputed.  (*Id.*)  The request for declaratory judgment that "the Plan and the Confirmation Order did not authorize FDIC-R to assert late claims" is similarly, per the FDIC-R, not disputed or relevant.  (*Id.*)

The FDIC-R contends its assertion of its "ownership" of the proceeds is not a "claim" against SVBFT or SVBFG.  (*Id.*)  As a result, declaratory relief will not resolve any uncertainty regarding the issue of the Insurance Claim and the proceeds.  (*Id.* at 33-34.)  With respect to whether the Bonds were Property of SVBG's estate, the FDIC-R claims that this is not at issue. (*Id.* at 34.)  Rather, the issue is who owns the Insurance Claim and proceeds based of SVB's injury.  (*Id.*)

The FDIC-R also requests that this Court deny the requested relief arguing that several of the requests for declaratory relief are disguised requests for injunctive relief.  (*Id.* at 35.)  For example, SVBFT requests an order from this Court enjoining the FDIC-R from interfering with

13

SVBT's rights under the Bonds.  (*Id.*)  The FDIC-R claims that section 1821(j) bars this Court from entering the requested injunction, and this Court should deny the request.  (*Id.*)

### b.   *SVBFT's Request for Declaratory Relief Is Implausible Because It Conflicts with the Terms of the Bonds*

The FDIC-R then argues that SVBFT's request for declaratory relief fails to state a plausible claim because it would render the insurance coverage for direct losses sustained by the ASSURED and the exclusion of indirect losses sustained by an ASSURED illusory.  (*Id.* at 36.) Accepting this argument would effectively provide a subsidiary with no right to recover on account of its direct covered losses, while the first named ASSURED would be permitted to recover for losses excluded under the Bonds.  (*Id.*)  The FDIC-R also claims that the Bonds apply recoveries to "the ASSURED's covered loss," which it believes indicates that the subsidiary which suffered the direct loss is the ASSURED that is the beneficiary of the proceeds. (*Id.* (quoting Chubb Bond, Compl. Ex. A, p. 21, § 11(a)).)

### 5.   The Court Should Strike SVBFT's Request for Attorneys' Fees

The FDIC-R then requests the Court strike SVBFT's request for attorneys' fees.  (MOL at 36-37.)  SVBFT has withdrawn its request for attorneys' fees, and the issue is now moot.  (*See* Opposition ¶ 93.)

## B.  The Opposition

### 1.   SVBFT Has Both Constitutional and Prudentia Standing

SVFT claims that the FDIC-R is incorrect in its application of FIRREA's succession clause and conflates Article III standing and the merits of the claim.  (*Id.* ¶ 24.)

a.   *FDIC-R Fails to Articulate a Cognizable Standing Challenge*

SVBFT argues that the FDIC-R does not make a meaningful argument regarding constitutional standing and instead focuses on Rule 12(b)(1) and Rule 12(b)(6) claiming that the Succession Clause bars SVBFT's claims.  (*Id.* ¶ 26.)  SVBFT states that the FDIC-R's failure to make a relevant Article III challenge is meaningful and argues that it has undoubtedly satisfied Article III's standing requirement.  (*Id.* ¶¶ 27-28.)  SVBFT claims that it is contractually entitled to payment under the Bonds as the First Named Assured, which establishes injury in fact, causation, and redressability.  (*Id.* ¶ 29.)  Additionally, SVBFT cites case law indicating that dismissal under Rule 12(b)(1) is improper when standing turns on unresolved contractual questions.  (*Id.*)

The FDIC-R's remaining contention is that it is the beneficiary of the Bonds as a result of the Succession Clause, which SVBFT claims is a merits argument that is improper for resolution at this stage.  (*Id.* ¶ 30.)  SVBFT notes that the Bonds designate it as the exclusive payee and First Named Assured, and it is seeking a declaration to confirm its contractual ownership rights.  (*Id.* ¶ 31.)  SVBFT characterizes the Motion as asking the Court to resolve disputed factual and legal questions of ownership on the merits, which is inappropriate on a motion to dismiss.  (*Id.*)

b.   *The FDIC-R Misapplies the Succession Clause*

SVBFT characterizes the FDIC-R's argument as involving two steps.  The first is that the FDIC-R asserts that because SVB also suffered loss, SVB owned the insurance claim, which passed to the FDIC-R.  (*Id.* ¶ 33.)

i.   FDIC-R's Succession Theory Ignores the Bonds' Provisions
     and Assumes Away the Dispute

SVBFT disputes the FDIC-R's core claim that SVB's loss due to forgery provides it with ownership of the proceeds.  (*Id.* ¶ 34.)  SVBFT argues that the Bonds designate it First Named

15

Assured and strips every other ASSURED of any direct beneficiary interest or right.  (*Id.*)

Rather than appointing a ministerial payee, SVBFT claims that the Bonds vest the contractual

right to receive payment in SVBFT.  (*Id.*)

SVBFT also claims that the FDIC-R's argument fails to consider that the incurrence of

the loss covered by the Bonds and ownership of the proceeds is the issue before the Court and

not an antecedent fact.  (*Id.* ¶ 35.)  Instead, the FDIC-R attempts to "assume away the dispute."

(*Id.*)  Citing case law, SVBFT argues that courts deny motions to dismiss where the dispute

involves unresolved factual and legal questions.  (*Id.*)

SVBFT then turns to the FDIC-R's argument involving principles of agency.  (*Id.* ¶ 37.)

SVBFT first claims that the FDIC-R's argument fails because agency duties apply to any

agreement with the subject principle, and the Bonds define SVBFG's right to payment without

considering agency.  (*Id.*)  SVBFT then continues on to argue that the FDIC-R misreads the Joint

Assured Provision, as only the first sentence pertains to agency, and only designates SVBFG as

the agent for ministerial purposes.  (*Id.*)  The remaining portion of the provision, SVBFT claims

establishes it as the sole beneficiary and all payments are payable exclusively to SVBFG in its

capacity as First Named Assured.  (*Id.*)

ii.  FDIC-R's Second Succession Theory Fails Under *Zucker*

SVBFT then claims that the FDIC-R's argument that SVBFT possessed a right to

payment prior to SVB's failure, but that right transferred to the FDIC-R, is a misapplication of

the Succession Clause.  (*Id.* ¶ 38.)

The FDIC-R cites *Zucker v. Rodriguez*, 919 F.3d 649 (1st Cir. 2019), which SVBFT

claims is distinguishable.  (*Id.* ¶ 39.)  For purposes of this Opinion, SVBFT's discussion of the

factual and procedural posture of *Zucker* is omitted.  SVBFT claims that the First Circuit in

*Zucker* examined whether the claims were asserted by the holding company in its capacity as a stockholder. (*Id.* ¶ 40.) SVBFT claims the First Circuit noted that the suit was entirely dependent on the holding company's position as a bank stockholder and sought recovery for the diminution of that stock. (*Id.*) The plaintiff required proof that the Bank's assets would have been greater and that the appreciated assets would have inured to the benefit of the holding company, but for the alleged wrongdoing. (*Id.*)

SVBFT then claims that the First Circuit's next step was to determine whether the stockholder claims "relate to or concern the assets of the Bank." (*Id.* ¶ 41 (internal citation omitted).) SVBFT claims that this case fails both steps of the First Circuit's analysis in *Zucker* because (i) SVBFT is not asserting claims in its capacity as stockholder of SVB and (ii) the rights SVBFT asserts are not "with respect to" SVB or its assets. (*Id.* ¶¶ 42-43.)

SVBFT also claims that the FDIC-R's reliance on findings in the North Carolina Action do not change the analysis as they do not address the Complaint in this action. (*Id.* ¶ 45.)

SVBFT asserts that the FDIC-R's position would create an absurd situation where any contractual right of a bank holding company that is economically connected to a failed bank would automatically transfer to the FDIC as receiver, which would improperly expand FIRREA. (*Id.* ¶ 46.)

### c.  *FDIC-R's Abandonment Argument Is Inconsistent and Legally Wrong*

SVBFT then claims that the FDIC-R's argument regarding abandonment is inconsistent because the FDIC-R simultaneously argues that the claims passed to the FDIC-R under the Succession Clause and that SVBFT abandoned all equity interests in SVB. (*Id.* ¶ 49.) However, SVBFT claims these two positions cannot both be correct because if SVBFT abandoned its equity interests in SVB, then the action is not equity holder-based and FIRREA's Succession

17

Clause does not apply. (*Id.*) On the other hand, if the claims were predicated on equity holder rights transferred to the FDIC-R, the SVBFT claims that abandonment would not defeat SVBFT's standing to challenge the FDIC-R's claim of ownership. (*Id.*)

SVBFT claims the contradiction is resolved when it is understood that SVBFT is not asserting any right as a stockholder of SVB and does not rely on its former equity interest to establish standing. (*Id.* ¶ 50.) Rather, SVBFT asserts an independent contractual right under the Bonds and does not defeat SVBFT's standing. (*Id.*)

### 2.   FIRREA Does Not Strip the Court of Jurisdiction

SVBFT claims that this Court has jurisdiction because neither 12 U.S.C. § 1821(j) or § 1821(d)(13)(D) strip this Court of jurisdiction. (*Id.* ¶ 51.)

### a.   *Section 1821(j) Does Not Strip the Court of Jurisdiction*

SVBFT claims that section 1821(j) does not strip this Court of jurisdiction because (i) courts possess the authority to make a threshold determination of whether section 1821(j) is applicable and (ii) section 1821(j) does not restrict a court's ability to declare the parties' rights under a contract. (*Id.* ¶ 52.) SVBFT argues that FIRREA presupposes the lawful exercise of receivership power, but it does not shield the FDIC-R from a judicial determination of whether the power exists. (*Id.* ¶ 53.) Further section 1821(j) is inapplicable when the FDIC-R has exceeded its statutory authority. (*Id.* ¶ 54.) SVBFT states that the FDIC-R is acting in excess of its authority, and accordingly section 1821(j) does not strip this Court of jurisdiction to review the matter. (*Id.*) Section 1821(j) also does not prevent the Court's ability to declare parties' rights under an agreement. (*Id.* ¶ 55.)

SVBFT also disputes the applicability of section 1821(d)(2)(B), which permits the FDIC-R to take over the assets of the insured depository institution. (*Id.* ¶ 56.) Claiming the FDIC-R

18

has no interest in the Bonds, a declaratory judgment in favor of SVBFT would not affect the

powers of the FDIC-R and thus not run afoul of section 1821(d)(2)(B).  (*Id.*)  SVBFT then

distinguishes the case law cited by the FDIC-R and argues that the cited decisions either support

SVBFT's case or are inapplicable to the instant matter.  (*Id.* ¶¶ 56-59.)

### b.   *Section 1821(d)(13)(D) Does Not Strip the Court of Jurisdiction*

SVBFT next argues that section 1821(d)(13)(D) does not strip this Court of jurisdiction,

as this limitation on jurisdiction applies only to property that is an asset of the failed bank, and it

does not require a party to exhaust administrative remedies regarding its own property.  (*Id.* ¶

61.)

Turning to *Federal Housing Finance Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d

476 (S.D.N.Y. 2012), SVBFT notes that the district court in that matter held that FIRREA's

jurisdiction-stripping provision applies only to claims that could be brought under the

administrative procedures of section 1821(d) and does not refer to any claim involving the FDIC.

(Opposition ¶ 62.)  SVBFT characterizes the court in *Federal Housing* as having determined that

assets and liabilities had passed from the FDIC-R by operation of law to JPMorgan under the

purchase and assumption agreement, and that administrative exhaustion was not required under

section 1821(d)(13)(D) when FIRREA does not provide an administrative mechanism to assert

claims.  (*Id.*)

Analogizing the instant matter to *Federal Housing*, SVBFT claims that it is not asserting

a claim against the FDIC-R for payment from the receivership or requesting declaratory relief

regarding an asset that unquestionably belongs to SVB.  (*Id.* ¶ 63.)  FIRREA's administrative

claims process provides no mechanism adjudicating a dispute over property that the claimant

purports was never property of SVB. (*Id.*) Therefore, SVBFT claims that section 1821(d)(13)(D) does not apply. (*Id.*)

SVBFT again argues that the FDIC-R's position assumes away the dispute. (*Id.* ¶ 64.) SVBFT claims that the FDIC-R has no beneficiary interest or right of action and therefore, no claim or right with respect to the proceeds passed to the FDIC-R. (*Id.*) FIRREA administrative claims procedures enables the FDIC-R to allow or disallow claims against the receivership estate but does not permit the FDIC to adjudicate disputes between third parties over ownership of property that was allegedly not a bank asset *ab initio*. (*Id.*) SVBFT distinguishes case law cited by the FDIC-R claiming that the instant case is fundamentally different or that the cited cases are inapplicable. (*Id.* ¶¶ 65-68.)

### 3.   This Court Has Jurisdiction to Enforce Its Orders and Adjudicate Ownership

Having dispatched with the FDIC-R's jurisdictional arguments, SVBFT then contends that this Court has the authority to adjudicate ownership of the proceeds under 28 U.S.C. § 1334(b) as this matter falls within the Court's "arising in" jurisdiction. (*Id.* ¶ 69.) SVBFT also notes that the Plan expressly provides that this Court retains jurisdiction to, *inter alia*, adjudicate any "motions, adversary proceedings, contested or litigated matters, and any other matters" relating to any claim, cause of action, demand, right, suit, or judgment of any kind or character whatsoever owned by SVBFG and transferred to SVBFT under the Plan. (*Id.* ¶ 71 (internal citation omitted).) Accordingly, SVBFT believes this Court has jurisdiction to resolve the ownership dispute. (*Id.*)

### 4.   SVBFT's Complaint is the First-Filed Action

SVBFT then argues that the instant matter should not be dismissed under the first-filed rule because this is the first proceeding that involves the litigation of the ownership of the

proceeds. (*Id.* ¶ 72.) The FDIC-R's claim that this action relates to the North Carolina Action is incorrect because the North Carolina Action involves the Insurers' liability under the Bonds, while this Court is asked to determine the ownership of the proceeds under the Bonds. (*Id.*)

SVBFT claims that the FDIC-R has not asserted any claims, crossclaims, or defenses related to payment entitlement under the Bonds and did not identify any fact or expert witness in any of its initial disclosures, responses to interrogatories, or supplemental disclosures with knowledge of information related to who is entitled to payment under the Bonds. (*Id.* ¶ 75.) Although the FDIC-R raised the Ownership Issue (defined *infra*) in its motion for summary judgment, SVBFT claims that motions for summary judgment cannot raise claims, rather they seek a resolution of claims already plead. (*Id.* ¶ 78.)

Therefore, SVBFT claims that the FDIC-R has failed to demonstrate that the two suits involve the same claim and improperly attempts to broaden the first-filed rule. (*Id.* ¶ 79.)

5. SVBFT'S Request for Declaratory Relief is Appropriate and Routinely Granted to Resolve Insurance Disputes

  a. *FDIC-R's "No Independent Cause of Action" Argument Misstates the Declaratory Judgment Doctrine*

SVBFT claims that the FDIC-R's argument that it cannot seek declaratory relief, absent a related coercive action, is not reflective of the case law. (*Id.* ¶ 82.) A party may seek declaratory relief to protect substantive rights without initiating a coercive action and all that SVBFT must demonstrate is a substantial controversy between parties with adverse legal interests of sufficient immediacy to warrant declaratory relief. (*Id.*)

SVBFT claims it satisfies these requirements and SVBFT and the FDIC-R have a live substantial controversy regarding ownership of the insurance proceeds. (*Id.* ¶ 83.) The North

Carolina Action also demonstrates that there is a controversy between the parties and SVBFT submits that their interests are adverse. (*Id.*)

### b. *Discretionary Factors Favor Granting SVBFT Declaratory Relief*

SVBFT claims that the discretionary factors weigh in favor of its request. (*Id.* ¶ 84.)

#### i.   SVBFT's Requested Declaratory Relief Serves a Useful Purpose

SVBFT contends that declaratory relief would serve a useful purpose by clarifying the parties' obligations under the Bonds. (*Id.* ¶ 86.) Additionally, SVBFT claims that the North Carolina Action does not provide a means to resolve the dispute because the issue of ownership of the Bonds is not squarely before the North Carolina Court. (*Id.*)

#### ii.   SVBFT's Declaratory Claims Do Not Amount to Procedural Fencing

SVBFT then argues that the declaratory claims are not merely procedural fencing as they involve the interpretation and enforcement of orders issued by this Court. (*Id.* ¶ 87.) SVBFT repeats its argument that the resolution of this dispute requires this Court to interpret orders it has previously issued, and, as the FDIC-R's ownership claim cannot be viewed in isolation, places this dispute squarely before this Court. (*Id.* ¶ 88.)

#### iii.   SVBFT's Requested Relief Does Not Conflict with the Bonds

Lastly, SVBFT disputes the FDIC-R's claim that the requested relief would render the insurance for direct losses and exclusion of indirect losses illusory by claiming that these provisions merely indicate what loss was covered under the Bond, but do not address who the Insurers are required to pay. (*Id.* ¶ 91.)

Additionally, SVBFT claims that the FDIC-R's argument that requested relief conflicts with the Bonds' subrogation provision fundamentally misunderstands the provision. (*Id.* ¶ 92.) SVBFT notes that the subrogation provision applies to post-payment recovery rights against third

22

parties, but it does not override the Joint Assured Provision or other payment rights under the Bonds.  (*Id.*)

## C.  The Reply

### 1.  SVBT Lacks Prudential Standing Under the Succession Clause

#### a.  *The FDIC-R Succeeded to All Right, Title, Power and Privileges of SVB Relating to SVB's Claim on Account of its Insured, Direct Loss*

The FDIC-R recounts its argument that it succeeded to all rights, titles, powers, and privileges of SVB, which include its claim for its loss under the Bonds.  (Reply at 4.)  Further, the FDIC-R notes that SVB was the ASSURED under the Bonds and suffered the direct loss from the forgeries.  (*Id.* at 5.)  The North Carolina Complaint includes allegations that the plaintiffs suffered a "Loss" arising from forgery of approximately $73 million indicating SVB was the entity that suffered the direct loss.  (*Id.* at 6.)

The FDIC-R also claims that SVBFT has admitted that any loss it incurred was an indirect loss based on its position as the equity owner of SVB.  (*Id.*)  Further, FDIC-R reiterates its argument that Joint Assured Provision establishes an agency relationship under the Bonds.  (*Id.* at 6-7.)

#### b.  *SVBFG's Rights as Agent Were Never Property of the Bankruptcy Estate and the FDIC-R Succeeded to Those Rights Regarding SVB's Direct Loss under the Second Part of the Succession Clause*

The FDIC-R claims the only rights SVBFG has regarding SVB's loss pertain to the prosecution of the Insurance Claim and receipt of the proceeds, which was never part of SVBFG's bankruptcy estate.  (*Id.* at 7.)  It inherits whatever rights, powers, and privileges SVBFG had under the second part of the Succession Clause which provides that "all rights, titles, powers, and privileges . . . of any stockholder . . . of such [depository institution in

23

receivership] with respect to the institution and the assets of the institution." (*Id.* at 8 (quoting 12 U.S.C. § 1821(d)(2)(A)(i)) (alterations in original).)  Furthermore, the FDIC-R claims that the Succession Clause unambiguously applies because the Insurance Claim "relates to" or "concerns" SVB's assets because the Insurance Claim is based on SVB's loss.  (Reply at 8.)

The FDIC-R also claims that SVBFT's argument that it is asserting its own independent contractual rights under the bonds is incorrect because the Succession Clause precludes the claim because SVBFT does not have its own direct loss under the Bonds.  (*Id.*)  The FDIC-R then claims that SVBFT's other attempts to distinguish *Zucker* are also unavailing.  (*Id.* at 9-11.)

The FDIC-R then argues that SVBFT ignores allegations in the North Carolina Complaint that restrict its role under the Bonds.  (*Id.* at 11.)  SVBFT attempts to limit its agency role by claiming that it is the agent for ministerial purposes.  (*Id.*)  The FDIC-R disputes this, claiming that the Joint Assured Provision paints a broad role for SVBFT as the sole agent for all purposed under the Bond.  (*Id.*)  Additionally, the second sentence of the Joint Assured Provision, when read with the first sentence describing SVBFT as the "sole agent for all purposes" demonstrates that the ASSUREDS did not require a direct beneficiary interest in the Bonds because SVBFG as their sole agent, owed fiduciary duties to the ASSUREDS.  (*Id.* at 12.)

Moreover, the FDIC-R submits that SVBFG's "beneficial interest in and right of action under the Bonds" is not illustrative of whom SVBFT may exercise those rights on behalf of.  (*Id.* at 13.)

      c.   *SVBFT Lacks Standing Because SVBFG Abandoned its Equity Interest in SVB and Related Recover Rights and/or Litigation Claims*

The FDIC-R then reiterates its argument that the SVBFT lacks standing because SVBFG relinquished its equity and related recovery rights and/or litigation claims.  (*Id.* at 13-14.)  This plain language the FDIC-R claims is a clear relinquishment of rights like the right SVBFT is

24

attempting to assert in this action.  (*Id.* at 14.)  The FDIC-R also notes that SVBFT's rights as

equity holder regarding the Insurance Claim passed to the FDIC-R and SVBFG had no

remaining rights to abandon despite SVBFT's claims that it still possesses rights or claims.  (*Id.*)

2.   This Court Should Dismiss the Complaint Because SVBFT Lacks
     Constitutional Standing

The FDIC-R again notes that SVBFT lacks constitutional standing because it (i) did not

suffer injury in fact and (ii) abandoned its equity interest in SVB and all related litigation and/or

recovery rights.  (*Id.*)

3.   FIRREA Strips this Court of Jurisdiction

The FDIC-R disputes SVBFT's argument that section 1821(j) does not apply arguing that

injunctive relief is not available even if the FDIC-R undertook action that breached a contract.

(*Id.* at 15-16.)  Instead, the FDIC-R claims it is authorized to take over assets and collect money,

like the collection and preservation of the Insurance Claim and proceeds, and this Court is not

entitled to interfere.  (*Id.* at 16-17.)

The FDIC-R then turns to section 1821(d)(13)(D) arguing that it strips this Court of

jurisdiction as no court may seek a determination of rights regarding the assets of a depository

institution for which the FDIC has been appointed receiver.  (*Id.* at 17.)  The FDIC-R claims that

SVBFT's attempt to skirt section 1821(d)(13)(D) by arguing it only applies to assets of the failed

bank is unavailing because, for the reasons discussed *supra*, the Insurance Claim is property of

SVB.  (*Id.* at 17-18.)  Even if the Insurance Claim was not property of SVB, it would still be

barred under section 1821(d)(13)(D) as seeking a determination of rights of SVB's assets.  (*Id.* at

18.)

25

4.   The FDIC-R's Remaining Arguments

The FDIC-R repeats its argument that the North Carolina Action is the first-filed action and that the issue of the ownership of the Bonds is before the North Carolina Court because the FDIC-R raised it in its motion for summary judgment. (*Id.*) The FDIC-R also claims that SVBFT fails to state a claim for declaratory relief under the DJA because SVBFT asserts no substantive claim. (*Id.* at 18-19.) The FDIC-R briefly concludes by claiming that this Court does not need to interpret the Plan, Confirmation Order, or Bar Date Order in order to adjudicate the issues raised in the instant matter. (*Id.* at 20.)

## D. Permissive Abstention

### 1.   The SVBFT Abstention Brief

SVBFT first argues that no parallel proceeding warrants abstention because this adversary proceeding is the "first procedurally proper action to present this ownership dispute." (SVBFT Abstention Brief ¶ 11). SVBFT notes that the issue of whether SVBFT or the FDIC-R is contractually guaranteed payment rights (the "Ownership Issue") was raised improperly on summary judgement and should be denied in the North Carolina Action. (*Id.* ¶ 11.) SVBFT asserts that this adversary proceeding involves "entirely separate issues from the North Carolina Action." (*Id.* ¶ 15.)

SVBFT additionally argues that even if the Ownership Issue has been properly raised, the Court should not abstain because deciding the Ownership Issue requires interpretation of the Plan and Confirmation Order, Bar Date, and Setoff Order. (*Id.* ¶ 19). SVBFT points to the Plan's language giving this Court jurisdiction over "any Claim or Interest." (*Id.* ¶ 13.) SBVFT argues that the Ownership Issue is a Claim because it asserts a "right to payment" from the assets of the former estate. (*Id.* ¶ 29). SVBFT argues that because resolution of the Ownership Issue

26

requires interpretation of the Plan, Confirmation Order, Bar Date Order, and Setoff Order, the state-law contract issues cannot be severed from bankruptcy issues, which predominate.  (*Id.* ¶¶ 27-29.)

### 2.   The FDIC-R Abstention Brief

The FDIC-R characterizes SBVFT's argument as to the bankruptcy-nature of the Ownership Issue as "contrived."  (FDIC Abstention Brief ¶ 2.)  The FDIC-R asserts that the specific carve outs in the Confirmation Order for FDIC insurance actions allow the Ownership Issue to be resolved without interpreting the Confirmation Order or Bar Date Order.  (*Id.*)  Additionally, even if interpretation were necessary, the FDIC-R points out that this Court's jurisdiction to do so is non-exclusive.  (*Id.* ¶ 7.)  The FDIC-R argues that state law issues related to contract, agency, insurance, and federal succession law predominate.  (*Id.* ¶ 2.)

The FDIC-R additionally highlights the progress towards resolving the Ownership Issue in the North Carolina Action, where the parties have already fully briefed and argued the competing motions for summary judgment and the North Carolina Court has heard argument and taken the matter under advisement.  (*Id.* ¶ 9.)  The FDIC-R highlights that given the Insurers are not parties to this adversary proceeding but are nondebtor defendants in the North Carolina Action, abstaining would allow a court with jurisdiction over all parties to the dispute to decide the Ownership Issue.  (*Id.* ¶ 12.)

## II.   **LEGAL STANDARD**

### A.  **Lack of Subject Matter Jurisdiction**

Rule 12(b)(1) of the Federal Rules of Civil Procedure is made applicable to a bankruptcy proceeding by Bankruptcy Rule 7012(b). *See* Fed. R. Bankr. P. 7012(b). "A case is properly

dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A court must view the complaint liberally and accept as true all material facts alleged in the complaint when considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *In re Finnie*, No. 05–16373, 2007 WL 1574294, at *3 (Bankr. S.D.N.Y. May 29, 2007) (citing *19 Court Street Assocs., LLC v. Resolution Trust Corp. (In re 19 Court Street Assocs., LLC)*, 190 B.R. 983, 995 (Bankr. S.D.N.Y. 1996); *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l., Ltd.*, 775 F. Supp. 101, 103 (S.D.N.Y. 1991)). However, the court need not draw inferences favorable to the plaintiff from the complaint, as is the case with a Rule 12(b)(6) motion to dismiss. *J.S. v. Attica Cent. Schools*, 386 F.3d 107, 110 (2d Cir. 2004). The court is allowed to consider extrinsic evidence and is not limited to the information contained in the pleadings. However, it may not rely on conclusory or hearsay evidence. *Kamen v. Am. Tel. & Tel.*, 791 F.2d 1006, 1011 (2d Cir. 1986) ("[W]hen ... subject matter jurisdiction is challenged under Rule 12(b)(1), evidentiary matter may be presented by affidavit or otherwise."); *Attica Cent. Schools*, 386 F.3d at 110. "The party seeking to invoke the court's jurisdiction has the burden of establishing that subject matter jurisdiction exists over its complaint." *In re Ener1, Inc.*, 558 B.R. 91, 94-95 (Bankr. S.D.N.Y. 2016) (internal citation omitted).

### B. Failure to State a Claim

A motion to dismiss for failure to state a claim is governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to an adversary proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). *See* Fed. R. Bankr. P. 7012; Fed. R. Civ. P. 12(b)(6). The "court must accept a complaint's allegations as true," and "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Further, when reviewing the sufficiency of a complaint, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court's role in evaluating a motion to dismiss is to determine the legal feasibility of the complaint, not to weigh the evidence that may be offered to support it. *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

In deciding a motion to dismiss, the Court accepts a complaint's factual allegations as true and must draw all reasonable inferences in favor of the plaintiff. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321-23 (2007); s*ee also Littlejohn v. City of N.Y.*, 795 F.3d 297, 306 (2d Cir. 2015). Although the allegations must be taken as true, the complaint must contain more than just a formulaic recitation of the elements of a cause of action, and the Court should "identify[] allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664; *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (stating that "bald assertions and conclusions of law will not suffice"). To survive a motion to dismiss for failure to state a claim, a plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "To show facial plausibility, the Claimant must plead 'factual content that allows the court to draw the reasonable inference that the [defendant] is liable for the misconduct alleged.'" *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009).

The Court's responsibility is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Liu v. Credit Suisse First*

29

*Bos. Corp. (In re Initial Pub. Offering Sec. Litig.)*, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation makers and citation omitted); *see also Koppel v. 4987 Corp.*, 167 F.3d 125, 138 (2d Cir. 1999) (plaintiff need only allege, not prove, sufficient facts to survive a motion to dismiss). The Court considers "facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken." *Hertz Corp. v. City of N.Y.*, 1 F.3d 121, 125 (2d Cir. 1993), *cert. denied*, 510 U.S. 1111 (1994). Dismissal is only warranted where it appears beyond doubt that the plaintiff can prove no sets of facts in support of her claim which would entitle her to relief. *See Maxwell Commun. Corp. Pub. Ltd. Co. by Homan v. Societe Generale (In re Maxwell Commun. Corp. Pub. Ltd. Co.)*, 93 F.3d 1036, 1044 (2d Cir. 1996).

## C.   Permissive Abstention

28 U.S.C. § 1334(c) governs abstention. That statute provides:

(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. (2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(1)–(2). Abstention is only mandated with respect to non-core matters pursuant to section (c)(2); permissive abstention from core proceedings pursuant to section 1334(c)(1) is left to the bankruptcy court's discretion. *In re Petrie Retail, Inc.*, 304 F.3d 223, 232 (2d Cir. 2002). SVBFT only argues for permissive abstention, not mandatory. The movant

30

bears the burden of establishing that permissive abstention is warranted.  *In re Aramid Ent. Fund,*

*LLC*, 628 B.R. 584, 594 (Bankr. S.D.N.Y. 2021).

Courts have identified twelve factors that may be considered in deciding a motion for

abstention:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention;

(2) the extent to which state law issues predominate over bankruptcy issues;

 (3) the difficulty or unsettled nature of the applicable state law;

(4) the presence of a related proceeding commenced in state court or other nonbankruptcy court;

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden [on] the court's docket;

(10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial; and

(12) the presence in the proceeding of nondebtor parties.

*In re Residential Capital, LLC*, No. 12-12020 (MG), 2015 WL 4747785, at *14 (Bankr.

S.D.N.Y. Aug. 4, 2015) (citing *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 332 (S.D.N.Y.

2003)).  But courts do not need to consider all twelve factors in every case.  *In re Tronox*, 603

B.R. 712, 726 (Bankr. S.D.N.Y. 2019) (citing *In re Cody, Inc.*, 281 B.R. 182, 190 (S.D.N.Y.

2002)).  These factors ask a court to balance the federal interest in efficient bankruptcy

administration against the interest of comity between the state and federal courts.  *See id.*  The

comity doctrine likewise applies between two federal courts.  The analysis is not simply a

"mechanical" or "mathematical" exercise and the Court "need not plod through a discussion of

each factor in the laundry lists developed in prior decisions."  *Id.* (citing *In re Janssen*, 396 B.R.

624, 636 (Bankr. E.D. Pa. 2008)).  Rather, the process thoughtfully assesses what makes good sense in the totality of the circumstances. *Id.*

Federal courts should proceed carefully before permissively abstaining because they have a "virtually unflagging obligation . . . to exercise the jurisdiction given them and may abstain only for a few extraordinary and narrow exception[s]." *Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 513 (S.D.N.Y. 2015) (citations omitted); *see also CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602, 607 (S.D.N.Y. 2008) ("Courts must be sparing in their exercise of permissive abstention and may abstain only for a few extraordinary and narrow exceptions.").  Given that "federal courts have an obligation to exercise the jurisdiction properly given to them, there is a presumption in favor of the exercise of federal jurisdiction and against abstention." *Aramid Ent. Fund*, 628 B.R. at 594 (internal quotations omitted).

A court may permissively abstain under section 1334(c)(1) "in favor of another federal court or tribunal, just as it can abstain in favor of a state court." *In re Motors Liquidation Co.*, 457 B.R. 276, 288–89 (Bankr. S.D.N.Y. 2011) (abstaining in favor of another federal court); *see also In re Dana Corp., Inc.*, No. 06-10354 BRL, 2011 WL 6259640, at *3 n. 4 (Bankr. S.D.N.Y. Dec. 15, 2011) (same); *In re Lear Corp.*, No. 0914326 ALG, 2009 WL 3191369, at *3 (Bankr. S.D.N.Y. Sept. 24, 2009) (same).

The policy of the United States Bankruptcy Court for the Southern District of New York does not favor abstention in matters involving court's interpretation of its own orders. *In re Motors Liquidation Co.*, 674 B.R. 425, 452–53 (Bankr. S.D.N.Y. 2025) (citing *In re U.S.H. Corp. of New York*, 280 B.R. at 338.)  "A bankruptcy court is[] the best qualified to interpret and

32

enforce its own orders ... therefore, should not abstain from doing so." *Motors Liquidation Co.*, 674 B.R. at 454 (quoting *In re Texaco, Inc.*, 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995)).

Courts close adversary proceedings which they refuse to hear on the basis of permissive abstention. *See, e.g.*, *In re Cody, Inc.*, 338 F.3d 89, 97 (2d Cir. 2003) *372 (noting that bankruptcy court declined jurisdiction under section 1334(c)(1) and dismissed adversary proceeding); *Fried v. Lehman Bros. Real Est. Assocs. III, L.P.*, 496 B.R. 706, 713 (S.D.N.Y. 2013) (directing clerk of court to terminate motions and close case when court found that abstention was mandatory under section 1334(c)(2)); *see also In re Falatico-Brodock*, No. 24-60308, 2025 WL 1155625, at *3 (Bankr. N.D.N.Y. Apr. 18, 2025) (directing clerk of court to close adversary proceeding because the court decided to permissively abstain from determining it); *In re Durso Supermarkets, Inc.*, 170 B.R. 211, 216 (S.D.N.Y. 1994) (dismissing claims without prejudice under 28 U.S.C. § 1334(c)(1)). This makes sense, as "[a]bstention motions ... concern . . . whether a court will exercise the jurisdiction it has," *Fried*, 496 B.R. at 712, and if a court declines to exercise jurisdiction over a case, there is no reason why such a case should remain on the court's docket.

## III.   DISCUSSION

This Court must first determine whether it has jurisdiction over the matter before turning to permissive abstention. *In re Cody, Inc.*, 281 B.R. 182, 189 (S.D.N.Y. 2002), *aff'd in part, appeal dismissed in part,* 338 F.3d 89 (2d Cir. 2003) ("[A]s a matter of logic, a court that lacks jurisdiction over a matter cannot "abstain" from deciding that matter"); *In re Cody, Inc.*, 338 F.3d 89, 94 (2d Cir. 2003) ("The District Court was correct to address the jurisdictional issue before reviewing the Bankruptcy Court's abstention decision"); *see In re Old Carco LLC*, 636 B.R. 347, 359 (Bankr. S.D.N.Y. 2022) (First determining jurisdiction prior to exercising

33

permissive abstention); *Bricker v. Martin*, 348 B.R. 28, 34 (W.D. Pa. 2006), *aff'd,* 265 F. App'x

141 (3d Cir. 2008) ("[A] bankruptcy court may permissively abstain from any proceeding *over*

*which it has jurisdiction*" (emphasis added)).  The structure of section 1334 also indicates that

the Court must have jurisdiction prior to exercising mandatory abstention.

### A.  Prudential & Constitutional Standing

#### 1.  Prudential Standing

Generally, to have standing in bankruptcy court, a party must possess all three of the

following: (i) prudential standing; (ii) constitutional standing; and (iii) standing under section

1109 of the Bankruptcy Code.  *In re Motors Liquidation Co.*, 580 B.R. 319, 340 (Bankr.

S.D.N.Y. 2018).  This Court has noted that the Supreme Court has identified at least three

different identifiable prudential standing rules: "(i) a general prohibition on a litigant raising the

legal rights of third parties; (ii) barring parties from adjudicating 'generalized grievances'

bearing on 'abstract questions of wide public significance' in the courts; and (iii) requiring that a

'plaintiff's complaint fall within the zone of interests protected by the law invoked.'"  *In re 1031*

*Tax Grp., LLC*, 439 B.R. 47, 60 (Bankr. S.D.N.Y.), *supplemented,* 439 B.R. 78 (Bankr. S.D.N.Y.

2010) (internal citation omitted).

The doctrine, self-imposed by federal courts, bars litigants "from asserting the

constitutional and statutory rights of others in an effort to obtain relief for injury to themselves."

*In re SVB Fin. Grp.*, 674 B.R. 111, 152 (Bankr. S.D.N.Y. 2025) (quoting *Kane v. Johns-Manville*

*Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 643 (2d Cir. 1988)) (internal quotation marks

omitted).  Prudential standing in this Circuit is a "jurisdictional requirement."  *Phoenix Light SF*

*Ltd. v. Bank of New York Mellon*, No. 14-CV-10104 (VEC), 2020 WL 2950799, at *1 n. 3

(S.D.N.Y. June 3, 2020); *but see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S.

118, 128 n. 4 (2014) (Noting that the term "statutory standing" is an improvement over the term "prudential standing" but noting that statutory standing may still be misleading because "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.,* the court's statutory or constitutional *power* to adjudicate the case.'" (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 642-643 (2002)) (emphasis in original)).  A motion to dismiss for lack of prudential standing is reviewed under Rule 12(b)(6), while a motion to dismiss for lack of constitutional standing is analyzed under Rule 12(b)(1). *Homar v. Fid. Nat'l Fin. Inc.*, No. 09 CIV. 7245 (PED), 2019 WL 13411475, at *9 (S.D.N.Y. May 21, 2019); *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003), *as amended* (Apr. 16, 2003), *abrogation on other grounds recognized by Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016).

The Succession Clause provides that the FDIC-R "shall . . . by operation of law, succeed to (i) all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution . . . ."  12 U.S.C. § 1821(d)(2)(A).

The FDIC-R contends that the first portion of the Succession Clause stating "all rights, titles, powers, and privileges of the insured depository institution" indicates that it alone has the right to pursue the Insurance Claim for the losses suffered by SVB.  (MOL at 18.)  On the other hand, SVBFT notes that the Bonds contain a provision stating, "every other ASSURED shall be conclusively deemed to have consented and agreed that none of them shall have any direct beneficiary interest in or any right of action under this Bond . . . ." (Chubb Bond, Compl. Ex. A, at 11, the "Beneficiary Provision.")  The parties dispute the relevance of the Beneficiary Provision and its impact on the ownership of the Insurance Claim.

35

The Beneficiary Provision also notes that the ASSUREDS are "conclusively" deemed to have surrendered a direct beneficiary interest in or under the Bond. (*Id.*) SVBFT has sufficiently demonstrated a plausible claim that the Beneficiary Provision does not grant the other ASSUREDS any right to the proceeds of the Insurance Claim. The FDIC-R, in a lengthy footnote, argues that whatever the purpose the Beneficiary Provision serves, Rule 17(a)(1) requires that SVB bring an action directly. (MOL at 19 n. 5.) Citing *New Amsterdam Cas. Co. v. W. D. Felder & Co.*, 214 F.2d 825 (5th Cir. 1954), the FDIC-R argues that a provision forbidding a party that is not the first named assured from bringing a suit violates Rule 17(a)(1). *Id.* at 826; *see* MOL at 19 n. 5. However, even if the FDIC-R is able to bring suit to recover for the proceeds under Rule 17(a)(1), that does not preclude SVBFT's standing to bring a claim for the proceeds under the Bonds. The FDIC-R is correct to note that the indirect losses were excluded from coverage and that SVB was the entity that suffered direct harm. Yet, SVBFT has sufficiently alleged a claim for the proceeds of the Bonds to enable the Court to find that SVBFT has prudential standing.

The second part of the Succession Clause provides that FDICR succeeds to "all rights, titles, powers, and privileges . . . of any stockholder . . . of such [depository institution in receivership] with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(i).

Two Circuit Courts have ruled on textual questions similar to that presented to the Court today. *Compare Zucker v. Rodriguez*, 919 F.3d 649 (1st Cir. 2019), *with Levin v. Miller*, 763 F.3d 667 (7th Cir. 2014). In *Zucker*, the First Circuit found that a holding company's right to bring D&O claims against directors and officers for malfeasance that depressed the bank's assets was a "right[] . . . of [a] stockholder" "with respect to . . . the assets of the institution" and the

36

FDIC succeeded to that claim. *Zucker*, 919 F.3d at 656-57. As an alternative basis for its decision, Judge Lynch noted that the insurance coverage was an "asset shared by the [h]olding [c]ompany and [b]ank" thus rendering the claim a "competing right to coverage" which constituted a "claim of a stockholder with respect to an asset of the [b]ank." *Id.* at 657.

Both parties cite the First Circuit's decision in *Zucker* as clarifying what assets the FDIC-R succeeds to under the Succession Clause. Applying *Zucker*, SVBFT's claim is likely not a "right . . . of [a] stockholder" within the meaning of the Succession Clause. For example, the First Circuit in *Zucker* notes that the claim brought by the holding company was a right of a stockholder because the holding company sought to recover for lost interests in the bank that would have flowed up to the holding company. *Id.* In other words, the right of the stockholder that passes to the FDIC as receiver is a right that is predicated on the equity interest of the holding company in the bank. The Insurance Claims, however, are allegedly not predicated on SVBFG's equity interest in SVB. Rather, they arise from the Bonds under which SVBFT is a party and has rights and obligations as first named assured, and possibly also, as payee. Accordingly, following the First Circuit's analysis in *Zucker* the FDIC-R does not appear to have succeeded to the claims under the Succession Clause.

When considering the Seventh Circuit's decision in *Levin*, the outcome does not appear to change. The Seventh Circuit took a narrower view of the "with respect to . . . the assets of the institution" language of the Succession Clause than the First Circuit in *Zucker*. In *Levin*, the court held that the "with respect to . . . the assets of the institution" language referred only to claims "that investors . . . would pursue derivatively." 763 F.3d at 672; *see Zucker*, 919 F.3d at 657 (interpreting *Levin*). Accordingly, the FDIC-R's argument would also fail if this Court interpreted the "with respect to . . . the assets of the institution" language narrowly under *Levin*.

As previously noted, the First Circuit articulated an independent reason that the insurance coverage in *Zucker* is a "right[ ] . . . of [a] stockholder . . . with respect to . . . the assets of the institution," which is that the insurance policy was a shared asset of the bank and the holding company and the parties had a "competing right" to the coverage. *Id.* However, the insurance policy in this adversary proceeding contains unique differences from the policy at issue in the *Zucker* case. The insurance bond in *Zucker* lacked an analogous Beneficiary Provision and instead contained a provision explicitly requiring payment. (*See* Defendant XL Specialty Insurance Company's Motion for Leave to File Reply Brief, *FDIC v. Galan-Alvarez*, Case No. 12-cv-01029 (D.P.R. Jan. 6, 2014), Dkt. 263-2 ("D&O Policy") § I.B (requiring Insurer to "pay on behalf of the Company Loss which the Company is required or permitted to pay as indemnification to any of the Insured Persons . . . "); *id.* § I.C (requiring insurer to "pay on behalf of the Company Loss resulting solely from any Securities Claim first made against the Company . . . "); *id.* § II.D (defining "Company" to mean "the Parent Company and any Subsidiary . . ."); *see also id.* § VI.K (authorizing "Parent Company" to "act on behalf of the Company" only as to payment of premiums, receipt of return premiums, and giving and receipt of notices, but not payment of loss).) The parties also do not appear to have "competing rights" under the Bonds as both parties claim the sole beneficiary right of the proceeds. Nonetheless, at the motion to dismiss stage, SVBFT has sufficiently demonstrated a colorable argument that the FDIC-R did not succeed to the Insurance Claims under the Succession Clause.

Therefore, the Court finds that SVBFT has prudential standing.

### 2.   Constitutional Standing

Once a party has shown that it has prudential standing, it then must prove that it has constitutional standing. *Motors Liquidation Co.*, 580 B.R. at 341. Constitutional standing

38

requires injury in fact; a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Recognizing that prudential standing is a more salient issue in the case, the parties only briefly discuss SVBFT's constitutional standing in this action. However, the FDIC-R still contends that SVBFT lacks constitutional standing because it (i) has no personal stake in the Insurance Claim based on damages incurred solely by SVB and (ii) abandoned its equity interest in SVB and all related litigation and/or recovery rights. (MOL 2-3; Reply at 14.) As discussed *supra*, SVBFT has sufficiently pled that it possesses a personal stake in the proceeds of the Insurance Claim based on its position under the Bond, and the abandonment of its equity interest has no bearing on SVBFT's claim.

Accordingly, SVBFT appears to have constitutional standing.

### B. Jurisdiction-Stripping Provisions of FIRREA

#### 1. Section 1821(j)

Section 1821(j) states "no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." 12 U.S.C. § 1821(j). There is no doubt that Congress intended section 1821(j) to be a broad limit on a court's power to review the FDIC's actions. *See Telematics Int'l, Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703, 705 (1st Cir. 1992). However, the FDIC-R's position would essentially render the Court powerless to determine if the FDIC-R had a rightful claim to an asset. *Vill. of Sugar Grove v. F.D.I.C.*, No. 10 C 3562, 2011 WL 3876935, at *8 (N.D. Ill. Sept. 1, 2011) ("We do not read § 1821(j) to prohibit us from declaring the

39

parties' rights under that agreement, or to require us to accept the FDIC's interpretation of it."); *RPM Invs., Inc. v. Resol. Tr. Corp.*, 75 F.3d 618, 619 n. 1 (11th Cir. 1996) ("We do not mean to indicate that every claim for declaratory relief against a failed institution would be subject to the jurisdictional bar of § 1821(j)).")

The Fifth and Eleventh Circuits have also addressed § 1821(j) in dicta noting that it does not bar all claims for declaratory relief. *See RPM Investments*, 75 F.3d at 619 n. 1 (barring a declaratory judgment claim that was "tantamount" to a claim for specific performance, but declining to hold that "every claim for declaratory relief against a failed institution would be subject to the jurisdictional bar of § 1821(j)."); *Carney v. Resolution Trust Corp.*, 19 F.3d 950, 958 n. 3 (5th Cir. 1994) ("Naturally, we do not hold that § 1821(j) would bar all actions for declaratory relief against the receiver of a failed financial institution."). But neither *Carney* nor *RPM Investments* discuss circumstances in which such claims may proceed without violating section 1821(j). *See F.D.I.C. v. OneBeacon Midwest Ins. Co.*, 883 F. Supp. 2d 754, 764 (N.D. Ill. 2012), *on reconsideration,* No. 11 C 3972, 2013 WL 951107 (N.D. Ill. Mar. 12, 2013).

Whether the Court has subject matter jurisdiction over the claim for declaratory relief is a close question. The request for declaratory judgment does not appear to resemble an injunction, as the relief would neither compel nor prevent an action otherwise authorized by FIRREA.[3] However, to the extent SVBFT seeks an injunction to restrain the FDIC-R or to enjoin the FDIC-R from interfering with SVBFT's rights under the Bonds, that request appears to be barred by section 1821(j) as an act that would "restrain or affect the exercise of powers or functions" of the

---

[3]   Section 1821(d)(2)(B) authorizes FDIC-R to "(i) take over the assets of . . . the insured depository institution with all the powers of the . . . shareholders . . . ; (ii) collect all obligations and money due the institution; (iii) perform all functions of the institution in the name of the institution which are consistent with the appointment as conservator or receiver; and (iv) preserve and conserve the assets and property of such institution." 12 U.S.C. § 1821(d)(2)(B)(i)-(iv)

40

FDIC-R.  *See Courtney v. Halleran*, 485 F.3d 942, 948-49 (7th Cir. 2007) (court lacked jurisdiction over a declaratory judgment claim tantamount to an injunction prohibiting the FDIC's settlement with another party); *Freeman v. F.D.I.C.*, 56 F.3d 1394, 1399 (D.C. Cir. 1995) (court lacked jurisdiction over a declaratory judgment claim that would have "restrained" the FDIC from foreclosing on the plaintiffs' property).  Yet, even deciding mere declaratory relief regarding the ownership of the proceeds of the Insurance Claim may "affect" the rights of the FDIC within the meaning of section 1821(j).

The more logical approach appears to be that section 1821(j) does not bar declaratory relief when a court is considering whether the FDIC-R has an ownership interest in a claim. *FDIC v. Olympic Towers Assocs.*, 1994 WL 148136, at *3 (W.D.N.Y. Apr. 12, 1994) ("[A] court has the power to adjudicate whether an action sought to be taken by the FDIC is indeed within its powers as receiver."); *In re Colonial Realty Co.*, 980 F.2d 125, 136 (2d Cir. 1992) ("[F]ederal courts have the ability to restrain the [receiver] where the [FDIC] is acting clearly outside its statutory powers." (internal citation omitted)); *MBIA Ins. Corp. v. F.D.I.C.*, 816 F. Supp. 2d 81, 103 (D.D.C. 2011), *aff'd,* 708 F.3d 234 (D.C. Cir. 2013) (same).  To hold otherwise would appear to permit the FDIC-R to use section 1821(j) to evade judicial review of assets that it did not control.

There is a sizeable body of law indicating that certain types of declaratory relief are not permitted.  *OneBeacon Midwest Ins. Co.*, 883 F. Supp. 2d at 764 (finding that an insurer's request for a declaratory judgment of non-coverage against the FDIC was barred by section 1821(j)); *Radian Ins., Inc. v. Deutsche Bank Nat. Tr. Co.*, No. CIV.A. 08-2993, 2009 WL 3163557, at *14 (E.D. Pa. Oct. 1, 2009) (denying a request for declaratory relief on the plaintiff's right to rescind three insurance policies for individual mortgages that originated from a

41

depository institution for which the FDIC was appointed receiver); *Trinsey v. K. Hovnanian at Upper Merion, Inc.*, 841 F. Supp. 694, 695 (E.D. Pa. 1994) (finding section 1821(j) stripped the court of jurisdiction when the plaintiff sought declaratory relief to, *inter alia*, declare void a sale agreement, a mortgage agreement, and demand a deed to be issued for property); *Rosa v. Resol. Tr. Corp.*, 938 F.2d 383, 399 (3d Cir. 1991) (denying an injunction requiring the bank and receiver to make contributions to an employee benefit plan but noting section 1821(j) did not deprive the plaintiff "of any other remedy that would not 'restrain or affect' the exercise of the receiver's or conservator's powers or functions.")  However, each of these cases appears to either compel the FDIC-R to affirmatively act or rescind an otherwise existing right of the failed bank.

At this stage, section 1821(j) does not deprive the Court of jurisdiction to hear the declaratory relief because the proceeds may not constitute "assets of the depository institution" and thus would not "restrain" or "affect" the FDIC-R's "powers or functions."

On balance, section 1821(j) does not strip this Court of jurisdiction at this stage to hear the requested declaratory relief.

### 2.  Section 1821(d)(13)(D)

Section 1821(d)(13)(D) of FIRREA contains another jurisdictional bar that the FDIC-R claims precludes SVBFT's requested relief.  Section 1821(d)(13)(D) provides:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

42

12 U.S.C. § 1821(d)(13)(D).  First, the Court must determine if the Insurance Claims constitute "assets" of the "depository institution," *i.e.*, SVB.  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 384 (3d Cir. 1994), *as amended* (Aug. 29, 1994) ("If the insurance policies are not assets of the bank, then [plaintiffs'] declaratory judgment action . . . [regarding] those insurance policies would not be barred under § 1821(d)(13)(D)(i).")

FIRREA does not provide a definition of the term "assets" and courts have used the common legal definition of "assets" in the absence of a formal definition.  *See id.* (Defining "assets" as "[p]roperty of all kinds, real and personal, tangible and intangible . . . .  The entire property of a person, association, corporation, or estate that is applicable or subject to the payment of his or her or its debts" (quoting Black's Law Dictionary 117 (6th ed. 1990)) (omission in original).)

Although it is clear that the Insurance Claims are an "asset" within the meaning of section 1821(d)(13)(D), it is not clear that they are "of [the] depository institution" as required by the statute.  At the motion to dismiss stage, SVBFT appears to have sufficiently pled that SVB has no right to the Insurance Claims or the proceeds under the Bonds and the Court finds that section 1821(d)(13)(D) does not strip it of jurisdiction.

## C.  Permissive Abstention

The FDIC-R has established that the balance of the factors weighs in favor of abstention.  First, the North Carolina Action, which has been pending for over three years, is a related proceeding.  Second, this Court cannot provide complete relief.  This adversary proceeding covers only the Ownership Issue between the FDIC-R and SVBFT and does not include the Insurers as parties, whereas the North Carolina Action against the Insurers can provide full relief as to the Ownership Issue and the Insurers' liability.  Third, state contract, agency, and insurance

43

law and the Succession Clause under Title 12 of the United States Code predominate in the Ownership Issue and in the underlying claims against the Insurers addressed in the North Carolina Action. Bankruptcy law will not be determinative and is severable to the extent it is implicated. Fourth, there is no more estate to be administered, so there is no benefit to the estate. The remaining factors are not applicable or not determinative.

As such, the balance of factors weighs in favor of abstention, and the Court will **PERMISSIVELY ABSTAIN**.

## IV.   CONCLUSION

For the reasons discussed above, this Court will **PERMISSIVELY ABSTAIN** under 28 U.S.C. § 1334(c)(1) in favor of the action pending in the United States District Court for the Eastern District of North Carolina.

Dated:   May 13, 2026
         New York, New York

_Martin Glenn_
_____
MARTIN GLENN
Chief United States Bankruptcy Judge